Kenneth S. SMITHER, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. SC 85565.

Supreme Court of Missouri,
En Banc.

June 22, 2004.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl Caponegro Nield, Asst. Atty. Gen., Jefferson City, for Appellant.

Jeffrey S. Eastman, Gladstone, for Respondent.

STEPHEN N. LIMBAUGH, JR., Judge.

The Director of Revenue revoked respondent Kenneth Smither's driving privileges for refusal to submit to a blood alcohol test, pursuant to section 577.041, RSMo 2000. After hearing, the Circuit Court of Platte County reinstated Smither's driving privileges. The director then appealed to the Court of Appeals, and after opinion, this Court granted transfer. Mo. CONST. art. V, sec. 10. The judgment is reversed.

On December 23, 2001, Trooper Steve Salfrank of the Missouri State Highway Patrol was dispatched to an accident site in the area of I–29 and Highway 152 in

Platte County. Upon arrival, he saw an overturned vehicle resting against a concrete barrier on the left side of the interstate. Trooper Salfrank determined that the vehicle had driven off the ramp exiting Highway 152 onto northbound I–29, hit an embankment, rolled over, and then skidded across three lanes of I–29 before hitting a concrete barrier.

Trooper Salfrank determined that Smither, who was lying on the ground behind the overturned vehicle, was the driver. Smither was injured, but conscious, and stated that he could not remember what had happened. Trooper Salfrank remained with Smither until paramedics arrived and placed Smither into an ambulance. During that time, Trooper Salfrank smelled alcohol on Smither's breath and noticed that his eyes were bloodshot.

Trooper Salfrank followed Smither to the hospital and interviewed him on his bed in the emergency room. In response to Trooper Salfrank's questions, Smither admitted that he had been drinking that night. Trooper Salfrank also administered a field sobriety test called the "gaze nystagmus test," which indicated intoxication, but he did not administer other tests due to Smither's incapacitating injuries. He then determined on the basis of all the evidence that Smither was intoxicated and told Smither that he was under arrest for driving while intoxicated. At this point, Trooper Salfrank read Smither the *Miranda* warnings and the implied consent law warning, which includes a request to submit to a blood alcohol test. In response, Smither asked to contact his attorney.

Trooper Salfrank waited while Smither's parents attempted to contact an attorney. After 40 minutes, Trooper Salfrank again requested that Smither submit to a blood alcohol test, but Smither again refused and then invoked his right to remain silent. Trooper Salfrank then issued Smither a written notice of revocation of driving privileges for failing to submit to the blood alcohol test, a summons for driving while intoxicated, and a summons for careless and imprudent driving. After issuing the notice and summonses, Trooper Salfrank left the hospital.

As noted, pursuant to section 577.041, the director revoked Smither's driving privileges for one year, and Smither sought review in the circuit court. Trooper Salfrank testified on behalf of the director, and Smither offered no evidence. The trial court held that the director had failed to make a *prima facie* case for revocation, specifically finding that Smither had not been arrested. The trial court then ordered the reinstatement of Smither's driving privileges.

■ The director contends that a *prima facie* case for revocation was made in that the evidence was sufficient to satisfy all three prongs of section 577.041.4, which are: 1) the driver was arrested; 2) the officer had reasonable grounds to believe the driver was driving while intoxicated; and 3) the driver refused to submit to a test of his blood alcohol content. The trial court found that the director had adequately shown reasonable grounds and refusal, but had not demonstrated that Smither was in fact arrested. This Court will affirm the trial court's judgment unless there is no substantial evidence to support it, the decision is contrary to the weight of the evidence, or the trial court erroneously declared or applied the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ The term "arrest" is defined as the "actual restraint of the person of the defendant, or . . . submission to the custody of the officer, under authority of a

warrant or otherwise." Sec. 544.180, RSMo 2000. However, merely informing someone he is under arrest is insufficient, and proof of physical restraint or the suspect's submission also is required to effectuate arrest. *See California v. Hodari D.,* 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991); *Saladino v. Dir. of Revenue,* 88 S.W.3d 64, 68 (Mo.App.2002). However, in the case of an injured suspect who is already immobilized or incapacitated, it is impractical to require officers to physically restrain the suspect further. *Saladino,* 88 S.W.3d at 68–69; *Knipp v. Director of Revenue,* 984 S.W.2d 147, 150–51 (Mo.App.1998). As the Court of Appeals noted in *Saladino,* "Applying additional restraints in such a case is redundant at best; at worst, it may interfere with medical treatment or aggravate the suspect's injuries." 88 S.W.3d at 69.

■ Here, Smither was taken by ambulance to the hospital emergency room, and although the exact extent of his injuries are not on the record, he was lying in an emergency room hospital bed after an accident that Trooper Salfrank characterized as "serious." At the least, his injuries prevented him from undergoing field sobriety tests that required physical activity, such as the "walk and turn" test or the "one leg stand" test. It is abundantly clear that at the time Trooper Salfrank informed Smither he was under arrest, Smither was not free to leave, not that he could have done so anyway because of his apparent incapacity. It also bears mention that after announcing the arrest, Trooper Salfrank read Smither the *Miranda* warning, read the implied consent warning and remained with him for nearly an hour before finally issuing a notice and summons. Under these circumstances, there was an "actual restraint of the person of the defendant," and for that reason an arrest was lawfully effectuated.

The judgment is reversed.

All concur.