

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| AMELIA BRIANE VAN VICKLE, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD87196 |
| | ) | |
| DIRECTOR OF REVENUE, | ) | Filed: November 19, 2024 |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF JOHNSON COUNTY
### THE HONORABLE KAITLYN A. ROACH, JUDGE

### BEFORE DIVISION THREE: MARK D. PFEIFFER, P.J.,
### LISA WHITE HARDWICK, J. AND THOMAS N. CHAPMAN, J.

The Director of the Missouri Department of Revenue ("Director") appeals the circuit court's judgment setting aside the suspension of Amelia Van Vickle's ("Driver") driving license. The Director contends the court erroneously applied the law in setting aside Driver's license suspension on the basis that Driver was not placed under arrest because she was not physically restrained by the officer at the accident scene. For reasons explained herein, we reverse the judgment and sustain the suspension of Driver's license.

## FACTUAL AND PROCEDURAL HISTORY

On March 26, 2022, Driver, 16 years old, was driving a pickup truck at a high rate of speed eastbound on Missouri Route D south of Knob Noster. The truck crossed the center of the road, drifted left off the side of the roadway before returning, skidding, drifting left, and returning to the roadway after striking two embankments. The truck then drifted across the roadway and traveled off the right side, where it struck another embankment before coming to rest.

A Missouri State Highway Patrol Trooper ("Trooper") was dispatched to the scene with notification that Driver sustained injuries in a single-car crash and was possibly intoxicated. When Trooper arrived, Driver in the back of an ambulance was being examined for injuries by Emergency Medical Services (EMS). Trooper immediately noticed that Driver's eyes were bloodshot and watery and that she smelled of alcohol. Driver was emotional and visibly shaken, causing Trooper to believe she could not concentrate at that time. Trooper left the ambulance to complete his crash investigation, during which time Driver's parents arrived and entered the ambulance.

Trooper later returned to the ambulance to find Driver was calmer. She admitted to driving the truck at the time the crash occurred. Trooper believed Driver could not perform field sobriety tests due to her injuries. He also did not feel comfortable "doing horizontal gaze nystagmus since she was laying down." At Trooper's request, Driver provided a preliminary breath test sample. The test indicated she had a 0.167% blood alcohol content ("BAC") level.

While in the ambulance, Trooper told Driver that she was "under arrest for driving while intoxicated." Trooper read the Missouri Implied Consent and requested that Driver submit to a chemical blood test. Driver responded "Yes sir." Trooper read Driver the *Miranda* warning and asked if she understood her rights, to which Driver responded "Yes sir."

Driver was then taken to a hospital via ambulance for treatment of her crash injuries. Her blood was drawn at the hospital, and Trooper seized the blood sample. The toxicology report from the sample also showed a blood alcohol content of .167%. Trooper issued Driver citations for driving while intoxicated (DWI) and for failure to drive on the right half of a roadway resulting in an accident.

The Missouri Department of Revenue administratively suspended Driver's driving privileges based on the DWI citation. Driver petitioned for a trial de novo in the Johnson County Circuit Court. At trial, the Director presented the Trooper's testimony and the Alcohol Influence Report. Driver challenged the issue of whether she was arrested by Trooper but stipulated to all other facts, including the results of the blood alcohol tests.

The court entered judgment setting aside the suspension of Driver's driving privileges. Despite finding the Director's evidence was credible, the court concluded that "[Driver]was not placed under arrest at the time of the blood draw. Merely informing [Driver] that she is under arrest is insufficient, and there was no physical restraint nor submission to authority as required by law." The Director appeals.

STANDARD OF REVIEW

"In appeals from a court-tried civil case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* at 307-08, citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence in a light most favorable to the judgment. *Kaercher v. Dir. Of Revenue*, 681 S.W.3d 735, 740 (Mo App. 2023). While we defer to factual findings, the issue of whether the subject was arrested under the facts found by the circuit court is a question of law this court reviews *de novo. Id.*

**ANALYSIS**

Director brings two points on appeal, both contending that the circuit court erroneously applied the law under Section 544.180 in determining that Driver was not under arrest at the time of the blood draw. In Point I, Director contends there was substantial evidence that Driver was under arrest by "actual restraint" because she was in an ambulance after suffering injuries from the crash. In Point II, Director contends there was substantial evidence that Driver was under arrest by her submission to Trooper's authority and compliance with his directions. Because we find that the Director is entitled to relief on Point I, we need not address Point II.

Missouri law authorizes the Department of Revenue to suspend or revoke a license of a driver arrested upon probable cause of driving while intoxicated with a blood alcohol

4

concentration greater than 0.08%. § 302.505.1. [1]  Section 544.180 defines "arrest" as an "actual restraint of the person of the defendant, or by [her] submission to the custody of the officer, under authority of a warrant or otherwise."

Generally, merely informing a suspect that she is under arrest is insufficient, and further proof of physical restraint or the suspect's submission is required to effectuate the arrest. *California v. Hodari D.*, 499 U.S. 621, 626, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991); *Saladino v. Dir. of Revenue*, 88 S.W.3d 64, 68 (Mo.App. 2002).  However, in the case of an injured suspect who is already immobilized or incapacitated, it is impractical to require officers to physically restrain the suspect further.  *Smither v. Dir. of Revenue*, 136 S.W.3d 797, 799 (Mo. banc 2004).  As noted in *Saladino*, "Applying additional restraints in such a case is redundant at best; at worst, it may interfere with medical treatment or aggravate the suspect's injuries." 88 S.W.3d at 69.

In Point I, Director argues that the circuit court misapplied the law in determining that Driver was not under arrest because she had not been physically restrained by Trooper by the time of her blood draw.  Pursuant to Section 544.180, Director contends that Driver was actually restrained because she was injured and immobilized in the ambulance at the time Trooper told her she was under arrest.   In response, Driver disputes that she was actually restrained because "there was no evidence that [she] was in fact injured" as a result of the car crash.  We disagree with Driver.

---

[1] All statutory references are to the Revised Statutes of Missouri 2016, as updated by the 2023 Cumulative Supplement.

5

Although the record does not identify Driver's specific medical conditions, the evidence clearly established that Driver was injured in a serious crash and had to be transported by ambulance to the hospital for treatment of her injuries. Her truck skidded off the road, hit two embankments and then crossed back over to the other side of the road, where it hit another embankment before coming to a rest. When Trooper arrived at the scene, Driver was in the ambulance being examined by EMS personnel. Trooper immediately observed that Driver showed signs of intoxication because her eyes were bloodshot and watery and she smelled of alcohol. Trooper testified that he was unable to do field sobriety tests because Driver was injured, and he could not perform the "horizontal gaze nystagmus since she was laying down." Based on his observations, Trooper told Driver that she was under arrest while she was in the ambulance and then obtained her consent for a chemical blood test. EMS then transported Driver to the hospital for treatment of her injuries and administration of the blood test, which confirmed her blood alcohol content of .167 %.

These facts are similar to *Smither,* where an officer responded to a single-car accident and found the driver lying injured, but conscious, on the ground near his overturned vehicle. 136 S.W.3d at 798. The officer smelled alcohol and noticed that the driver's eyes were bloodshot. *Id.* An ambulance took the driver to the hospital, where the officer interviewed him in the emergency room. *Id.* The officer administered the gaze nystagmus test but was unable to conduct other field sobriety testing due to the driver's injuries. *Id.* Based on the observations, the officer told driver that he was under arrest for DWI and read the implied consent and Miranda warnings. *Id.*

6

In *Smither,* the court noted that the record was silent on the nature of driver's injuries, but the evidence clearly established that he was taken to the hospital following a car accident and was lying in an emergency room for medical treatment. *Smither*, 136 S.W.3d at 799. Those facts were sufficient to establish that the driver's injuries and immobilized condition made it impractical for the officer to use further physical restraint. *Id.* Under these circumstances, the Supreme Court found that an arrest was lawfully effectuated under Section 544.180 because there was "an actual restraint" of the defendant. *Id.*

In this case, the circuit court erred in determining that Driver was not arrested because there was no physical restraint. The evidence established that Driver was actually restrained because she was injured, lying down, and immobilized in the ambulance at the time Trooper told her that she was under arrest. Driver acknowledged that she was under arrest by responding "Yes sir" when Trooper read her the Implied Consent form and the Miranda warning. As in *Smither,* the evidence established that Driver was under arrest because she was not free to leave the scene and could not have done so anyway because of her incapacity. *Id.* at 799.

The Director's evidence was sufficient to prove that Driver was actually restrained pursuant to Section 544.180, because she was incapacitated and immobilized in the ambulance at the time of her arrest. The circuit court misapplied the law in concluding that further evidence of physical restraint was required. The Department was authorized to suspend Driver's license because she was arrested upon probable cause of driving while intoxicated with a blood alcohol concentration greater than 0.08%. Accordingly,

7

we grant relief on Point I and reverse the judgment setting aside the suspension of Driver's driving privileges.

## CONCLUSION

The circuit court's judgment is reversed. Pursuant to Rule 84.14, we grant the relief which should have been ordered by entering judgment for the Director and sustaining the suspension of Driver's driving privileges.

_____
LISA WHITE HARDWICK, JUDGE

All Concur.